UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONICA DINH, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-01276 |
| | § | |
| WERUNTEXAS, LLC; dba MERCY, WE | § | |
| RUN HOU, LLC; dba ENGINE ROOM, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Plaintiffs bring this case against Defendants WeRunTexas, LLC d/b/a Mercy ("Mercy Nightclub"), Mojeed Martins, Jonathan Reitzell and Steven Rogers for failure to pay wages and failure to pay minimum wage pursuant to the Fair Labor Standards Act ("FLSA").

On April 24, 2019, this Court held a non-jury trial in the above-entitled matter. During the proceeding, the Court received evidence and heard sworn testimony from Rosana Turbay (former cocktail waitress and cocktail manager for Mercy Nightclub), Khirstie Matta, Kimberley Kolbye, Monica Dinh, Alexandra LeBlanc, and Danielle Henderson (former cocktail waitresses for Mercy Nightclub), John Caravello (former General Manager of Mercy Nightclub), Steven Rogers, Mojeed Martins, and Johnathan Reitzell (former owners of Mercy Nightclub and former members of WeRunTexas, LLC).

Having considered the evidence, testimony and oral arguments presented during the trial, and applicable law, the Court now enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). The specific findings of fact and conclusions of law are set out below. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such. Any conclusion of law that should be construed as a finding of fact is

hereby adopted as such.

I. **Findings of Fact**

1. Mercy Nightclub employed Plaintiffs during the timeframe of October 2016 until February 2017 (the "Relevant Time Period).

2. Defendant WeRunTexas, LLC had ownership interest in Mercy Nightclub beginning October 2016 and during the Relevant Time Period.

3. Steven Rogers, Mojeed Martins, and Johnathan Reitzell ("Club Owners") were the members of WeRunTexas, LLC during the Relevant Time Period.

4. Plaintiffs presented documents that revealed Mercy Nightclub's net total sales were approximately $11,000 to $39,000 per week.[1] Based upon weekly net sales numbers, Mercy Nightclub netted over $500,000 annually. Defendants presented no evidence to rebut the documents presented by Plaintiffs.

5. There was no witness or document which provided evidence that out-of-state goods or services were exchanged through Mercy Nightclub.

6. The Club Owners hired a general manager, John Caravello, to run the day-to-day operations of Mercy Nightclub.[2]

7. The general manager (John Caravello) and two cocktail managers (Tanner Cox and Rosana Turbay) supervised the cocktail waitresses during the Relevant Time Period.[3] Rosana Turbay was hired by John Caravello, and Tanner Cox was hired by the Club Owners.[4]

---

[1] Plaintiffs' Ex. 4–6.
[2] Plaintiffs' Ex. 2; Testimony of John Caravello.
[3] Testimony of Khirstie Matta, Kimberley Kolbye, Monica Dinh, Alexandra LeBlanc, and John Caravello.
[4] Testimony of John Caravello.

8. Scheduling and duties were assigned to the cocktail waitresses by John Caravello and the cocktail managers.[5] John Caravello set the club operating hours and the required number of cocktail waitresses necessary to staff Mercy Nightclub and provided this information to the cocktail managers who in turn communicated staffing needs and schedules to the cocktail waitresses.[6]

9. Plaintiffs' job duties as cocktail waitresses included greeting guests, seating guests at tables, servicing guests' drink orders, monitoring consumption of alcohol, handling guests' inquiries, handling payments, reporting to management, and cleaning and setting up tables at Mercy Nightclub.[7]

10. John Caravello and the cocktail managers supervised the cocktail waitresses during the day-to-day operations of Mercy Nightclub. John Caravello and the cocktail managers had control over the staff at Mercy NightClub—cocktail waitresses reported to John Caravello and the cocktail managers while working at Mercy Nightclub.[8]

11. John Caravello and the cocktail managers determined the rate of pay and the tips to be paid to the staff each night. The cocktail managers kept notes each work night to determine the cash earned and the tip amounts paid to cocktail waitresses at Mercy Nightclub.[9] John Caravello prepared weekly financial reports for the Club Owners.[10]

---

[5] Plaintiffs' Ex. 7 (John Caravello is listed as "Boss" on the group text between himself, the cocktail managers, and the cocktail waitresses); Testimony of Khirstie Matta, Kimberley Kolbye, and John Caravello.
[6] Plaintiffs' Ex. 7; Testimony of Rosana Turbay.
[7] Testimony of Rosana Turbay.
[8] Testimony of Khirstie Matta, Kimberley Kolbye, Alexandra LeBlanc, Monica Dinh, and John Caravello.
[9] Plaintiffs' Ex. 8 (Testimony of John Caravello), Testimony of Khirstie Matta, Kimberley Kolbye, Alexandra LeBlanc.
[10] Plaintiffs' Ex. 4–6 (Testimony of John Caravello)

3

12. Pay checks were distributed to the cocktail waitresses by the cocktail manager—Tanner Cox. Tanner Cox wrote in the amounts that the cocktail waitresses earned, and Club Owner Steven Rogers signed the pay checks.[11]

13. During the Super Bowl 2017 work schedule, the price per bottle of alcohol sold by cocktail waitresses and tips were communicated to the cocktail waitresses by John Caravello and the cocktail managers, not the Club Owners.[12]

14. John Caravello drafted the Mercy Nightclub Employee Handbook.[13]

15. The Club Owners were in the nightclub a few times during the Relevant Time Period and spoke to the management staff.[14] The cocktail waitresses testified that they never spoke to the Club Owners and rarely or never saw them.[15]

16. The cocktail waitresses testified that they assumed that the owners also had the power to hire and fire the staff simply because they were the owners. However, actual hiring and firing of cocktail waitresses was done by the general manager—John Caravello.[16]

## II. Conclusions of Law

1. This Court has subject matter jurisdiction over this action pursuant to the FLSA (29 U.S.C. § 216(b) and 28 U.S.C. § 1331).

2. Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) and (d) because Defendants reside in this District, a substantial part of

---

[11] Plaintiffs' Ex. 1. Testimony of Steve Rogers, Monica Dinh, and Alexandra LeBlanc
[12] Testimony of Khirstie Matta
[13] Plaintiffs' Ex. 3; Testimony of John Caravello.
[14] Testimony of Rosana Turbay and John Caravello.
[15] Testimony of Rosana Turbay, Khirstie Matta, Monica Dinh, and Alexandra LeBlanc.
[16] Testimony of Rosana Turbay, Khirstie Matta, Kimberley Kolbye, Monica Dinh, Alexandra LeBlanc, and John Caravello. Specifically, John Caravello hired Rosana Turbay and Kimberley Kolbye. Cocktail manager Tanner Cox reached out to Alexandra LeBlanc concerning the position of cocktail waitress at Mercy Nightclub.

4

the events forming the basis of this action occurred in this district and the parties have agreed to this venue.

3. An FLSA claim requires that: (1) an employer-employee relationship existed during the claimed unpaid overtime periods; (2) the employee was involved in activities within FLSA coverage; (3) the employer violated the wage requirement; and (4) the amount of compensation owed. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

## A. Employer-Employee Relationship

4. "The FLSA circularly defines an 'employee' as 'an individual employed by an employer' and an 'employer' 'includes any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) (citing 29 U.S.C. § 203(d), (e)).

5. The Fifth Circuit uses the "economic reality test" to determine FLSA employer-employee relationship. *Id.* To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams*, 595 F.3d at 620). "While each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless." *Id.* at 357. "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir.

5

2012) (quoting *Gray*, 673 F.3d at 357)). Merely being an owner or member of the company does not subject an individual to FLSA liability, it must be shown that the individual exerts actual operational control over employees. *Gray*, 673 F.3d at 355–56.

6. Pursuant to the testimony of the Plaintiffs, John Caravello, and the Club Owners, the Club Owners did not hire or fire cocktail waitresses, they did not supervise the work of the waitresses, they did not control the schedule or the conditions of the work of the waitresses, they did not determine the rate and method of payment, and they did not maintain employment records.

7. The evidence presented revealed that John Caravello, the general manager of Mercy Nightclub, and the cocktail managers determined the Plaintiffs' compensation and had day-to-day operating control and direct supervision of the Plaintiffs.

8. Accordingly, under the economic reality test, Plaintiffs did not establish an employer-employee relationship between the Club Owners—Jonathan Reitzell, Steven A. Rogers, and Mojeed Martins, Jr.—and the Plaintiffs. Therefore, the Club Owners are not liable as employers in their individual capacity under the FLSA.

9. Plaintiffs established an employer-employee relationship between Mercy Nightclub and the Plaintiffs. Additionally, the evidence shows an employer-employee relationship between John Caravello and the Plaintiffs.

**B. Involvement in Activities within FLSA Coverage**

10. The FLSA applies to employees engaged in the production of goods for commerce ('individual coverage') or those who are employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage'). *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).

11. The FLSA defines an "enterprise engaged in commerce," as follows:

    "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that—(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated); 29 U.S.C. § 203(s)(1).

12. With respect to both types of FLSA coverage (individual and enterprise), "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

13. The Fifth Circuit has adopted a practical test to determine whether an employee is personally engaged in commerce. *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007). Under this test, a plaintiff must demonstrate that his or her work is "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Id.*

14. Alleging that Plaintiffs handled materials or supplies that have been moved in interstate commerce is not enough to show the employee is engaged in commerce. *See Duran v. Wong*, No. 4:11-CV-3323, 2012 WL 5351220, at *3 (S.D. Tex. Oct. 23, 2012) (holding that the mere use of goods that have traveled in interstate commerce is by itself insufficient to establish individual coverage under the FLSA). Furthermore, "mere usage of credit cards is insufficient for purposes of establishing FLSA individual coverage."

7

*Payne v. Sparkles Hamburger Spot, LLC*, No. 4:17-CV-341, 2018 WL 6517463, at *3 (S.D. Tex. Aug. 14, 2018) (quoting *Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-CV-625-BN, 2016 WL 8674569, at *4 (N.D. Tex. Dec. 16, 2016)).

15. Plaintiffs did not produce evidence to show that Mercy Nightclub is an enterprise engaged in commerce as defined by the FLSA. Nor did Plaintiffs produce evidence to show that their work was directly and vitally related to interstate commerce under the FLSA. Therefore, Plaintiffs did not meet their burden of establishing individual or enterprise coverage under the FLSA.[17]

## III. Conclusion

Plaintiffs failed to show by a preponderance of the evidence that Defendants were liable for the alleged violations of the FLSA. Specifically, Plaintiffs failed to show an employer-employee relationship between Plaintiffs and Defendants Jonathan Reitzell, Steven A. Rogers, and Mojeed Martins, Jr., and Plaintiffs failed to establish either individual or enterprise coverage under FLSA.

Therefore, for the foregoing reasons, judgment is entered in favor of Defendants. Plaintiffs shall take nothing. This is a FINAL JUDGMENT.

It is so ORDERED.

AUG 2 6 2019
Date

The Honorable Alfred H. Bennett
United States District Judge

---

[17] The Court notes that this ruling on enterprise liability is narrowly cabined by its interpretation of the FLSA and applicable case law; the determination of what constitutes interstate business activity should not be construed to apply to any other statutory regime. Additionally, the Court's ruling is confined to the unique facts established by the evidence presented in this case.